2010 ME 59

**David S. LLOYD et al.**

v.

**ESTATE OF Annabelle E. ROBBINS.**

Supreme Judicial Court of Maine.

Argued: May 20, 2010.
Decided: July 8, 2010.

---

Barry K. Mills, Esq. (orally), Hale & Hamlin, LLC, Ellsworth, ME, for the Estate of Annabelle E. Robbins.

William B. Devoe, Esq. (orally), Eaton Peabody, Bangor, ME, for David S. Lloyd and Vickie R. Lloyd.

Panel: SAUFLEY, C.J., and LEVY, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] The Estate of Annabelle E. Robbins appeals from an entry of a summary judgment by the Superior Court (Hancock County, *Cuddy, J.*) in favor of David and Vickie Lloyd on the Lloyds' complaint for breach of a deed's warranty covenants. The Estate argues that (1) the Superior Court erred as a matter of law by applying the twenty-year statute of limitations regarding sealed instruments, 14 M.R.S. § 751 (2009), to this case; and (2) the six-year general statute of limitations, 14 M.R.S. § 752 (2009), should have been applied and bars recovery on the Lloyds' claims. Because we conclude that the Superior Court erred as a matter of law when it applied the twenty-year statute of limitations, we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

[¶ 2] The parties are largely in agreement regarding the following facts, which, viewed in the light most favorable to the Estate as the non-moving party, are established in the summary judgment record. *See Blue Star Corp. v. CKF Props., LLC,* 2009 ME 101, ¶ 23, 980 A.2d 1270, 1276.

[¶ 3] In January 2000, Annabelle E. Robbins deeded a 17.55-acre parcel of land in Southwest Harbor to the Lloyds "with Warranty Covenants," The deed stated, in relevant part:

KNOW ALL MEN BY THESE PRESENTS, That I, ANNABELLE E. ROB-

BINS ... for consideration paid GRANT to DAVID S. LLOYD AND VICKIE R. LLOYD ... with Warranty Covenants, as joint tenants, a certain lot or parcel of land, together with the structures and all other improvements thereon....

. . . .

By their acceptance of this deed, the herein Grantees acknowledge, for themselves, their heirs and assigns, that portions of an abutting property owner's house and septic system encroach upon the northwesterly portion of the herein conveyed premises.

[¶ 4] The deed contained the seal of a notary public, with the word "SEAL" printed next to it, but no other indication that the document was intended to be under seal pursuant to 14 M.R.S. § 751 [1] or treated as a sealed instrument pursuant to 1 M.R.S. § 72(26–B) (2009).[2] After the deed's execution and delivery at the closing, it was recorded in the Hancock County Registry of Deeds.

[¶ 5] A dispute subsequently arose between the Lloyds and the abutting landowners Peter Benson and Susan Rand regarding the northwesterly boundary of the Lloyds' property. This resulted in litigation and ultimately a judgment, affirmed by us on appeal, that Benson and Rand are the titleholders to nearly three acres of the northwesterly portion of the parcel described in the deed. *See Lloyd v. Benson,* 2006 ME 129, ¶ 1, 910 A.2d 1048, 1049.[3]

---

1. Title 14 M.R.S. § 751 (2009) provides in its entirety:

   Except as provided in Title 11, section 2–725, personal actions on contracts or liabilities under seal, promissory notes signed in the presence of an attesting witness, or on the bills, notes or other evidences of debt issued by a bank shall be commenced within 20 years after the cause of action accrues.

2. Title 1 M.R.S. § 72(26–B) (2009) provides that an unsealed instrument will be "give[n] ... the legal effect of a sealed instrument" when the instrument contains certain recitals, such as a recital that the signer intends the instrument to take effect as a sealed instrument or a recital that the instrument bears the seal of the signer.

3. Though the Lloyds initiated the action in that case, Benson and Rand filed counterclaims seeking a declaratory judgment re-

[¶ 6] The Lloyds subsequently filed this action against Annabelle Robbins in January 2008, alleging breach of covenant of seisin, breach of covenant of right to convey, breach of warranty covenants, and unjust enrichment. The Lloyds filed a motion for a summary judgment in November 2008 regarding liability on all counts.[4] Sometime after these motions were filed, Annabelle Robbins passed away and her Estate was substituted as the defendant.

[¶ 7] Citing to an affidavit of Peter Benson, the Estate asserted in its statement of material facts that Benson had informed the Lloyds' attorney prior to the closing date that the boundary was incorrectly stated in the deed. In addition, the Estate asserted that Benson informed the Lloyds of his claim within days of the closing. The Lloyds denied both facts, claiming that Benson first met with them several months after the closing date and that they had been told prior to the closing that Benson and Rand's house and septic system encroached upon only a small portion of the property, which they would still own in fee.

[¶ 8] The Superior Court granted the Lloyds' motion for summary judgment on the first three counts of their complaint, but denied their motion for the final count of unjust enrichment because the Lloyds had an adequate remedy at law. The parties subsequently stipulated to damages, and the Estate's timely appeal followed.

## II. DISCUSSION

[¶ 9] Our analysis of this case requires us to make two distinct inquiries: (A) whether the Short Form Deeds Act, 33 M.R.S. §§ 761–775 (2009), precludes any statute of limitations from applying to this action; and, if not, (B) which statute of limitations applies and how it applies.[5] When construing a statute, "we look first to the plain meaning of the statute, and second, if there is any ambiguity, to extrinsic sources." *Fournier v. Elliott*, 2009 ME 25, ¶ 11, 966 A.2d 410, 413–14 (quotation marks omitted). We review an entry of a summary judgment de novo, viewing the evidence in the light most favorable to the party against whom judgment has been entered. *See id.* (quotation marks omitted).

### A. Whether a Statute of Limitations Applies

[¶ 10] The Lloyds argue that the Short Form Deeds Act, 33 M.R.S. §§ 761–775, precludes the application of any statute of limitations to this or any action for breach of warranty covenants. Title 33 M.R.S. § 764, the section of the Act governing warranty deeds, states:

§ 764. **Warranty covenants**

In a conveyance of real estate the words "warranty covenants" shall have the full force, meaning and effect of the following words: "The grantor covenants with the said grantee, his heirs

---

garding the location of the boundary and claiming ownership of the disputed land through adverse possession. *See Lloyd v. Benson*, 2006 ME 129, ¶ 4, 910 A.2d 1048, 1050.

4. They also filed a motion for a summary judgment on the issue of damages, which was denied and is not part of this appeal.

5. The Estate also argues that the Lloyds were not entitled to a summary judgment on the merits because the Estate raised genuine is-

sues of material fact regarding whether the breach of covenant claims had been waived at the time of transfer. To support this assertion, the Estate notes that the Lloyds acknowledge in the deed the existence of an encroachment "upon the ... conveyed premises." This description of the encroachment clearly indicates that the encroached portion of the land was intended by both parties to be included in the premises conveyed; as such, we find this argument unpersuasive and do not address it further.

and assigns that he is lawfully seized in fee of the premises, that they are free of all encumbrances, that he had good right to sell and convey the same to the said grantee to hold as aforesaid, and that he and his heirs shall and will warrant and defend the same to the said grantee, his heirs and assigns forever, against the lawful claims and demands of all persons."

The Lloyds argue that this language creates warranty obligations in perpetuity that are not subject to a statute of limitations because the grantor promises to defend the "grantee, his heirs and assigns" against lawful claims "forever." We disagree.

[¶ 11] "Forever" does not modify a grantor's duty to "warrant and defend." It, along with the words "heirs" and "assigns," is a word of inheritance that defines the extent of the estate conveyed by a deed. *See* 33 M.R.S. § 772(1); *see also* 1 Richard R. Powell, *Powell on Real Property* § 13.04[1] (Michael Allan Wolfed., Matthew Bender 2006) (illustrating specific words of inheritance required by early common law). Contrary to the Lloyds' assertions, we conclude that the breach of one or more of the "warranty covenants" described in section 764 of the Short Form Deeds Act does not give rise to a right of action in perpetuity that is not subject to a limitations period.

**B. Which Statute of Limitations Applies**

■ [¶ 12] We next decide which statute of limitations applies to this action alleging a breach of warranty covenants. The Superior Court applied the twenty-year limitations period of 14 M.R.S. § 751, noting: "[T]his deed was under seal within the meaning of 14 M.R.S. § 751.... 14 M.R.S. § 751 still permits a longer limitations period for written contracts or liabilities that have been impressed with the seal of a notary public, such as the warranty deed in this case." The Estate argues that

the court erred in this regard because although Annabelle Robbins's deed bore a notarial seal, it was not sealed by her as grantor and, therefore, was not a document under seal for the purposes of section 751. We review the interpretation and application of a statute de novo and we strictly construe statutes of limitation. *See Dowling v. Salewski,* 2007 ME 78, ¶¶ 10, 11, 926 A.2d 193, 196.

**1. Title 14 M.R.S. § 751**

■ [¶ 13] Title 14 M.R.S. § 751 provides that "personal actions on contracts or liabilities under seal ... shall be commenced within 20 years after the cause of action accrues." The statute does not define "under seal," a term of art with a lengthy history of use and multiple potential meanings. Guidance is provided, however, by 1 M.R.S. § 72(26–B), which explains when unsealed instruments will be given the effect of sealed instruments:

**26–B. Unsealed instruments, when given effect of sealed instruments in any written instrument.** A recital that such instrument is sealed by or bears the seal *of the person signing the same* or is given under the hand and seal *of the person signing the same,* or that such instrument is intended to take effect as a sealed instrument, shall be sufficient to give such instrument the legal effect of a sealed instrument without the addition of any seal of wax, paper or other substance or any semblance of a seal by scroll, impression or otherwise; but the foregoing shall not apply in any case where the seal of a court, public office or public officer is expressly required by the Constitution, by statute or by rule of the court to be affixed to a paper, nor shall it apply in the case of certificates of stock of corporations. The word "person" as used in this subsection shall include a corporation, association, trust or partnership.

(Emphasis added.) Similarly, Black's Law Dictionary defines "contract under seal" as "[a] formal contract that requires no consideration and has the seal *of the signer* attached." Black's Law Dictionary 320 (7th ed. 1999) (emphasis added). These definitions establish that for a document to be "under seal," the seal must be that of the signer of the instrument.

[¶ 14] Thus, a notarial seal does not render a document under seal for purposes of 14 M.R.S. § 751 because the seal of office belonging to a notary public is not the personal seal of the individual signing the document. The court erred as a matter of law when it concluded that the twenty-year statute of limitations, 14 M.R.S. § 751, applies to this case.

    2.  Title 14 M.R.S. § 752 and When a
        Cause of Action Accrues for Breach
        of the Warranty Covenants

[¶ 15] Unless another more particularized statute applies, the statute of limitations for all civil actions is six years after the cause of action accrues. *See Dowling*, 2007 ME 78, ¶ 12, 926 A.2d at 196; *see also* 14 M.R.S. § 752.[6] The Estate contends that the six-year civil statute of limitations bars the Lloyds' claims because the cause of action for each breach of covenant accrued upon the delivery of the deed, which occurred more than six years prior to the filing of this action. The Lloyds argue that their claims were timely brought because the breach of the warranty covenants occurred at the time of their actual eviction from the property, and the time of eviction was in 2006, when we affirmed the judgment declaring that the disputed property belonged to Benson and Rand. Whether a claim is barred by the statute of limitations is a question of law which we review de novo. *See Francis v. Stinson*, 2000 ME 173, ¶ 56, 760 A.2d 209, 220.

[¶ 16] Though both parties assert that all three claims for breach of covenant accrued at the same time, we have long recognized that a personal covenant is a present covenant while a covenant that runs with the land is a future covenant. Because of this distinction, breaches of these covenants can accrue at different times. *See* Paul G. Creteau, *Maine Real Estate Law* 192–93 (1969); *see also Thompson v. Richmond*, 102 Me. 335, 338, 66 A. 649, 650 (1906); *Reed v. Pierce*, 36 Me. 455, 460 (Me.1853); *Ballard v. Child*, 34 Me. 355, 356–57 (Me.1852). Therefore, we individually analyze each covenant at issue to determine when the cause of action accrued for each breach.[7]

### a. Covenant of Seisin

[¶ 17] The covenant of seisin represents that the grantor is lawfully seised of the premises; in other words, it indicates that the grantor has a lawful estate in the land that the grantor intends to convey. 4 Herbert Thorndike Tiffany,

---

6. Title 14 M.R.S. § 752 (2009) provides in its entirety:

    All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state, or of a justice of the peace in this State, and except as otherwise specially provided.

7. The Lloyds alleged three breaches of covenant in their complaint: (1) breach of covenant of seisin; (2) breach of covenant of right to convey; and (3) breach of "warranty covenants." Because they have presented no arguments on appeal regarding any encumbrance, and represented at oral argument that this appeal was "not about" the encroaching house and septic system, we treat the complaint's assertion of a breach of "warranty covenants" as referring to the covenants of warranty and quiet enjoyment, which are frequently regarded as identical and are usually considered together. *See* Creteau, *Maine Real Estate Law* 191 (1969).

*Real Property* § 1000, at 255–56 (3rd ed. 1975); Creteau, *Maine Real Estate Law* 190–91. This covenant is breached when the grantor has no title or has lost title through the adverse possession of another. 4 Herbert Thorndike Tiffany, *Real Property* § 1000, at 256. Because it is a personal covenant, any breach of the covenant of seisin occurs the moment the covenant is made. *See, e.g., Montgomery v. Reed,* 69 Me. 510, 515 (Me.1879); *Ballard,* 34 Me. at 356; *Griffin v. Fairbrother,* 10 Me. 91, 95 (Me.1833); *see also* Cowan, *Maine Real Estate Law and Practice* §§ 6:3, 6:4 at 233–34 (2d ed. 2007); Creteau, *Maine Real Estate Law* 193.[8]

[¶ 18] The deed warranting that Robbins was lawfully seised of the premises was delivered in January 2000. The present action was not brought until January 2008. The Lloyds' claim for breach of covenant of seisin is therefore barred by the six-year statute of limitations. 14 M.R.S. § 752.

### b.  Covenant of Right to Convey

[¶ 19] The covenant of right to convey represents that the grantor has a right to convey the land described in the deed; this covenant is usually, though not always, equivalent to the covenant of seisin. *See* 4 Herbert Thorndike Tiffany, *Real Property* § 1001, at 259–60; Creteau, *Maine Real Estate Law* 190–91. The covenant of right to convey is also a personal covenant, and like the covenant of seisin is breached, if at all, at the moment it is made. *See Prescott v. Hobbs,* 30 Me. 345, 346 (Me.1849); *Griffin,* 10 Me. at 95; *see*

*also* Creteau, *Maine Real Estate Law* 193. The Lloyds' claim for breach of covenant of right to convey is therefore barred by 14 M.R.S. § 752.

### c.  Covenants of Warranty and Quiet Enjoyment

[¶ 20] The covenants of warranty and quiet enjoyment are usually considered together. Creteau, *Maine Real Estate Law* 191. They represent that the grantee will enjoy the premises without disturbance and that the grantor will warrant and defend the premises against all lawful claims by third persons. *See* 4 Herbert Thorndike Tiffany, *Real Property* § 1010, at 276. The grantor must defend the premises even if the claims against title or defects in title arose before he or she acquired title. *See* Creteau, *Maine Real Estate Law* 192.

[¶ 21] Because these covenants run with the land, the common law required a grantee to prove eviction in order to recover for breach of the covenants. *See Pierce,* 36 Me. at 460, 462–63 (noting that a covenant of freedom from encumbrances is breached at the time of conveyance, but a warranty covenant is breached at the time of eviction); *see also* Creteau, *Maine Real Estate Law* 192 (noting that covenants of warranty and quiet enjoyment require eviction to be breached). When a grantee has never been in possession of the conveyed property, because another party, who claims superior title, is in possession, the covenants are deemed breached without any other act on the part

8. Since 1835, the Legislature has granted a remote grantee the authority to sue a grantor for breach of personal covenants upon eviction. *See* P.L. 1835, ch. 183 (currently codified at 14 M.R.S. § 4 (2009)). Though we are mindful of this authority, we have nonetheless long held that it does not convert personal covenants into covenants that run with the land, nor does it affect a cause of action

between the grantee and the grantor. *See Thompson v. Richmond,* 102 Me. 335, 338, 66 A. 649, 650 (1906); *see also Montgomery v. Reed,* 69 Me. 510, 515 (Me.1879) (noting that a covenant of seisin is broken upon delivery of the deed); *Reed v. Pierce,* 36 Me. 455, 460 (1853) (noting that a covenant of freedom from encumbrances is breached at the time of conveyance).

of either the grantee or the party in possession. *See Harrington v. Bean,* 89 Me. 470, 475, 36 A. 986, 987–88 (1897); *see also* 4 Herbert Thorndike Tiffany, *Real Property* § 1013, at 284. In such an instance, the breach of covenant occurs at the time of delivery of the deed. *Cf. Blanchard v. Blanchard,* 48 Me. 174, 177 (Me.1859) (holding that when the plaintiff could not possess property because of an assigned dower, the breach occurred at the time of the conveyance).

[¶ 22] In this case, the summary judgment record does not establish as undisputed fact who possessed the contested property at the time of the conveyance from Annabelle Robbins to the Lloyds or whether the Lloyds ever successfully possessed the encroached land. Neither party has provided direct evidence of possession. The Estate asserted, however, based on Benson's affidavit, that much of the disputed area was "marshy and, depending on beaver activity, [was] sometimes under water." It noted that the only practical building sites on the disputed land were those that already contained the encroaching septic system and house. The Lloyds denied these facts, and David Lloyd testified that he "ha[d] never seen the disputed area … under water since [he became] familiar with the property."

[¶ 23] Further, whether Benson and Rand claimed superior title at the time of the conveyance is also a disputed fact. The Estate claims that Benson informed the Lloyds' attorney prior to the closing date that the boundary was incorrectly located and that Benson met with the Lloyds within days of the closing to assert ownership of the disputed land. The Lloyds deny these assertions, contending that they were told that the area of encroachment was only a small corner of the property and that they would own the underlying fee to the disputed property. The Lloyds further claim that Benson first met with them "several months" after the closing date.

[¶ 24] These are genuine issues of material fact that remain in dispute. Accordingly, we vacate the judgment and remand this matter to the Superior Court for further proceedings consistent with this opinion.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.